The first case today, number 221387, United States v. Gene Marrero Burgos. Well, counsel for appellant, please come up and introduce yourself on the record to begin. Good morning, your honors. Luke Roseal for the appellant, Gene Marrero Burgos. May I please reserve one minute for rebuttal? You may. Thank you. District Judge Bissosa focused his sentencing rationale too much on community characteristics and not enough on the individual aspects of the defendant who was standing before him when he issued that sentence. And the overarching theme that I want to try and strike here is the one from Gall v. United States about the importance of the uniqueness of sentencing and the individuality of sentencing. And the other point I want to make at the outset here is that everyone agrees that an above-guideline sentence was appropriate in this case. The parties agreed to recommend a sentence six months in excess of the guidelines. Mr. Marrero Burgos waived his right to an appeal for a sentence up to 12 months in excess of the guidelines. And so the question here today is not between and within guideline sentence and a sentence that exceeds the guidelines, but how much excess did the district judge's discretion provide? District Judge Bissosa is not bound by the plea agreement. That's exactly correct. And it's a difference what the parties, there was a joint recommendation of 90 months by way of variance, and he sentenced to 108 by way of variance. So where's the error there? So I would say that the error becomes clear when we look at the case law, and the way I want to try to set it up is two goal posts. One on the lower end where a lesser variance was vacated by this court, and then a couple cases where a larger variance was upheld by the court. And so the case on the lower end is under a different sentencing guideline, so that's a legal distinction. But factually speaking, there are a lot of similarities. And the case I'm talking about here is Rivera Berrios, 968 F. 3rd, 130. And there, there were 36 rounds of machine gun ammo found. Here, there were 21 rounds of machine gun ammo. Isn't that a machine gun possession case? That's correct. And so that's why I mentioned at the outset, Chief Judge Barron, that it is under a different sentencing guideline. So there is that legal distinction that lowers its relevance, I concede. But factually speaking, it's quite on point. And what this case did is held in Rivera Berrios that a 12-month variance was excessive under that sentencing guideline. Or machine gun possession. Correct. The worry was that it was just going to be double counting it, right? Pardon? The worry was it was effectively just double counting. Yes, yes, that it was already accounted for in the sentencing guideline. And the sentencing guideline here does not account for the nature of the firearm as being a machine gun. And so that's why I say the other goal— Isn't that a material distinction then? It is, yes. And of course— How do you address it? So the way that I address it is with reference to a couple other more recent cases under the guideline that is applicable here. Those are United States v. Merced Garcia, 24 F. 4th, 76. There they were dealing with a 30-month variance. There were seven firearms, two of which were machine guns, 1,616 rounds of ammunition. It was found in the defendant's home. And those are all inculpatory facts that are absent from this record. And those inculpatory facts— And that's the case where we upheld the variance. That's correct. You upheld a 30-month variance. So I take it that there's less of a ground for the variance than there was in that case. Precisely correct. But the relevant question is, is there too little of a ground? I think that's exactly right. You can't show that by showing that there's a case in which there was more evidence that was upheld. You need a case that shows when you have this little evidence, it wouldn't be upheld. And one thing that I've struggled with, Chief Judge Barron, is in this circuit, with a case under the guideline that's applicable here, I'm not familiar with a case with the constellation of facts that are apparent on this record. And so the best I can do is make reference to cases with factual similarities, Rivera-Barrios, but it's under a different sentencing guideline, and then make reference to cases with factual distinctions, but under the same guideline. And we're in between those two. Let me also ask you, here you have a 924C. Yes. And you also have the 841, which he pled guilty to. So this is not a scenario where it's a—as Chief Judge Barron said, it's a mere possession. He's admitted to the facts. Drugs, firearms, and furtherance of the drugs. Shouldn't Judge Pesoso here have more leeway than if we, let's say, Rivera-Barrios in that scenario? Yes. I would say that District Judge Pesoso should have more leeway than in Rivera-Barrios because of the different sentencing guideline and because of the different charges at issue. It collapses back to the question. Yes, Judge Thompson, I'm sorry. You're conceding there. What makes this one to be too much? What makes this one to be too much is when we juxtapose the factual record in this case against the factual record in cases where similar variances were upheld by this court under the same guideline that's at issue here, what we see is that many significant inculpatory facts are missing from this record. And in direct response to Judge Gelpe's question, another case I would bring up, especially with the point about the drugs, Judge Gelpe, is United States v. Rosario Merced. That's 109F477, just earlier this year. And the reason I bring that up is because drugs weren't charged in that case, but they were recovered, or at least drugs weren't convicted. There was no guilty plea to the drug charge in that case, and there was 10.1 grams of crack cocaine and 1.5 grams of fentanyl, four magazines, high-capacity magazines, 107 rounds of machine gun ammunition, and there was a prior charge in that case as well, whereas here there's no priors. There the defendant had been sentenced for aggravated burglary and illegal appropriation, and that was a 33-month variance. So what we see there is we can uphold a 30-month and a 33-month variance with that constellation of additional inculpatory facts that are absent from this record. That's on the top end. On the bottom end, on a different sentencing guideline, even a one-year variance would be too much. And so our argument here is that the parties appropriately agreed to a six-month variance, and it was appropriate for Mr. Marrero-Burgos to waive his appellate rights with up to a one-year variance given the constellation of facts present on this record.  Pardon me? How big would this variance be? I believe it was 24 months above the top of the guideline range when you take into account both of the charges. The other things I wanted to try and highlight. I need to ask you a nitty-gritty question. Do you practice here? In Puerto Rico? Yes. No, I practice in Massachusetts. Okay. All right. Then you wouldn't know the answer. I'll save it for maybe your sister counsel if she practices here. Very well. And I do want to express my gratitude to the court for giving me the opportunity. It's my first time being in Puerto Rico, and I really do appreciate it. Apologize for the weather. Even still. It's been worse, though. And so getting on to the other cases. Stay on the list if you want to come back. Thank you. Yes, Judge Thompson. I certainly will. The other cases that I wanted to point out where there were additional inculpatory facts justifying a variance that are absent from here, Ponte Colon relied upon. These are just arguments that one would make for the exercise of discretion by the district court about where to set the variance. He set the variance. You need to show a legal error in showing us that there are cases with more facts that were upheld. He's just not going to demonstrate legal error. Do you have anything that shows legal error? I understand Your Honor's point. I do. And the problem is that under this guideline here, the 2K2.4. I understand that. So what is the legal argument you would like us to adopt as to why? It's not your fault. There's no case that's on point. I'm not saying there is. But since there's no case, do you have a legal argument as to what it is that is the legal error? Certainly. The legal argument is that when the sentencing guideline doesn't take into account the nature of the firearm as a machine gun, that does increase the sentence court's discretion to vary. But there needs to be a boundary to that. And it's for this court to set that boundary. And there isn't a case setting it yet. And what is the reason why that boundary was crossed? And how would you like us to define the boundary?  I would say one reason that boundary was crossed here is when you – The boundary first. What's the boundary before you get to have – My argument is that it's one year. I think an alternative argument would be that given that – and the reason for that argument is Mr. Marrero-Burgos waived his right to appeal for any variance that was lower than one year. And what I want to make sure that I don't miss mentioning before my last 30 seconds are up here is that there was an undue focus here on community characteristics. Nearly half of the sentencing rationale is focused on that. It was striking reading the sentencing rationale here and in Rivera-Barrios and some of the other cases for their similarities. And so what we're asking for the court to do is to define the top end of the 2K2.4 discretion to vary when it is a machine gun and to hold that this case exceeded that boundary. But this case is not simply a case of where the judge says, based on the community characteristics, I'm going up. He does say that, but then there's the other. So it's not – the argument's not – the decision is not based on simply that. May I have one moment to respond to that question, Chief Judge Barron? I agree, Judge Helvey, but it's based too much on the community characteristics. What the judge does – what District Judge Bessosa did here was to basically recite biographical facts from the PSR. The PSR had already taken into account these facts in, you know, setting the guideline range. And so it is a matter of weighing what extent of community characteristics does the judge have discretion to rely upon, and our argument is that the reliance in this case exceeded that extent. Thank you. Oh, go ahead. I thought that what I was getting out of your argument from your discussion of the case law was that you were suggesting that we have upheld an upward variance where the facts were much more egregious than here, and that because the facts aren't as bad that it seems arbitrary to say that this person is equally culpable as someone who did a lot more but that they received the same sentence, so that it's arbitrary. Or at least near equally culpable. Judge Thompson, you stated my argument much more succinctly and accurately than I could have done, so I thank you for that. But what are we supposed to do with it? What I'm asking is that you vacate the sentence below and return it for the entry of a sentence either no more than one year in excess of the guideline range given the lack of inculpatory facts on this record. It's just that even if I understand what your argument is, it's hard for me to understand given the discretion that's imbued with the district court how we say that this much is too much. May I just have one parting comment? Thank you. I concede that under 2K2.4 the nature of the firearm is not taken into account, and therefore when a machine gun is involved, that gives grounds for a variance. But there's got to be a limit to that discretion. The case law doesn't set that limit yet, and the lack of inculpatory facts on this record makes it an appropriate vehicle for this court to use to set that limit. It seems like you've got two things running. That sounds more like a substantive reason for this objection. And I do frame my argument in both terms. And then the other piece of it is insofar as it's a procedural objection, what is the procedural error you're identifying? That's the community factors we're giving too much weight. Precisely, that the explanation relied too much on those community characteristics. Thank you. Thank you, Your Honors. Thank you, Counsel. Will attorney for Apley please come up and introduce yourself on the record to begin? Good morning. I may please the court. Jeanette Goyazo for the United States. Mr. Marrero has conceded that there was a basis for the variance. So the question before the court is whether the variance that Judge Bezos adopted was reasonable. And the judge did set forth plenty of reasons in support of the reasonable of that sentence, including the fact that the firearm that Mr. Marrero pleaded guilty to was a pistol that had been modified to function as a machine gun, which as we all know is not something that is considered in the guideline applicable to the charge he pled guilty to. So that's one part of the basis. What else did Judge Bezos, outside of community factors and outside of the modification for being a machine gun, is there any more beef to his substance for why he went upwards? Yes, Your Honor. He pointed out to the fact that it was a machine gun, but not only a machine gun, one that had been modified. He pointed out to the fact that these firearms are particularly dangerous in the hands of untrained individuals such as Mr. Marrero. He pointed out there was a presence of a high-capacity magazine. There was a large amount of ammunition that was also present, more than has been present in any of the similar cases that have been before this court. The court did mention the acute problem of drug violence in Puerto Rico, but that was done in passing. I take objection to the argument that the court relied too much on community considerations because the court started by laying out specific concerns about the defendant and his offense, and then the court says additionally there is a serious problem of violence in Puerto Rico. Let me ask this. If the community considerations were an issue in this case, it would probably be an issue in every single case from your office because your office, every time it comes to our sentencing, will mention that, and I would assume all the district judges, including myself in the past, do mention that as part of the entire sentence, correct? Correct. I don't think there's a sentence here in Puerto Rico that doesn't mention that. And he only mentioned it in passing, and he prefaced that with the word additionally after he had enunciated the aggravating factors that he had taken into account. And this court has said before in Flores Magico that a consideration of the location is not at odds with an individualized sentence. It's just one more factor that is being taken into consideration about defendant and his offense. The court also took into account the high rate of recidivism that has been shown for firearm offenders and the fact that Moreto was distributing drugs and had a history of drug use. And the recidivism, I assume, it's from the sentencing commission report, correct? That is correct, which we had submitted on the government sentencing memorandum, and the court made reference to those statistics, correct. And so I take Mr. Moreto's arguments before this court to be more of weighting of the factors and not the reasonableness of the sentence. So it seems that Mr. Moreto – I'm sorry, Judge Thompson. Do you practice in this jurisdiction? Yes, ma'am. Okay. So I'm trying to figure out when the government and the defense is getting together to work on plea bargaining. And maybe this is just because of the cases that have come before us, and I know a whole bunch of criminal cases don't get appealed. The government and the defense seem to come to an agreement about an upward variance that is inevitably ignored in the cases that come before us. It's like meaningless. By the district? By the district court. Well, Your Honor, of course. And so I don't know what incentive there would be for a defendant to agree to an upward variance. Would you help me appreciate that? There's plenty of incentive, and I want to divide my answer in two parts. Okay. First, of course, the cases that come before Your Honor are those where the plea agreement was not honored. Because if it had been honored, then it wouldn't be before this court. The waiver of appeal clause would have been triggered. Right. So that's one part of the answer. The second part of the answer, and specifically the case in the matter before Your Honor, is that the benefit is that had it not been for the plea agreement, defendant faced a statutory minimum sentence of 30 years as to count one, which was dismissed, which was the count that actually charged the possession of the machine gun in furtherance of a drug trafficking conspiracy. So even— You're saying that's a mandatory minimum? Yes, ma'am. As to count one, which was dismissed, and this was made explicit in the plea agreement, had he not entered in the plea agreement and had he been convicted of count one, the mandatory minimum sentence would have been 30 years. So the benefit of the plea agreement is instead of 30 years, if he gets convicted or pled to count one, he's doing 108 months, which is even with the upward variances, eight and a half years versus 30 years. Correct. So even at seven years, which was the sentence that Mr. Moreira received, he still received a 23-year benefit from what could have been the minimum sentence the court would have been called to impose had he been convicted of count one. So even with that, what I would call is a moderate variance, considering the circumstances, he already agreed to a variance of 12 months. The judge, in his weighting of the factors, disagreed with the parties and reached the conclusion that the appropriate variance was 24. But considering the facts of the case and considering, in particular, that what Congress authorized for the conduct that he pleaded guilty to, which was the possession of a machine gun in furtherance of job trafficking, for that offense, Congress authorized 30 to life. And so he did receive a benefit. And in particular, as to the count he pleaded guilty to, Congress also authorized five years to life. So within that large range of possible sentences, we submit to a court that the moderate variance of 24 months was reasonable, considering all the factors that the court relied on. Let me also note, I believe he's received a policy benefit because there have been attorney generals in the past, not under this administration, that say U.S. attorneys, the most severe count, that's the one you're going to prosecute. You're not going to plead with that. The attorney general could issue that. That's not happening right now, so he's getting the benefit. Because I know in the past there's been others, you know, times the U.S. attorney here doesn't have that discretion. I believe that was the case at some point in the past. Yes, Your Honor. And so at bottom, what we want to highlight is that the request from Mr. Moreto seems to be for this court to strip the district court from discretion and to make the plea agreement essentially binding on the court. Now, even though Mr. Moreto agreed to a variance up to 72 years and that was incorporated into his waiver of appeal clause, that cannot be taken as a trade jacket that is going to bind the court from exercising its own discretion, weighting the facts that are relevant and that are not disputed in this case and none of the facts that the parties had agreed or submitted to the court, a Rule 11C1C plea, which would have bound the court. But that was not submitted by the parties. That was not the case. In this case, the parties' agreement left complete discretion to the court to enter the sentence it deemed appropriate. Even though the parties had made the recommendation, the court, of course, is always free to weight its own, make its own assessment of the weight of all the factors. So Brother Counsel points out cases with similar, well, with facts that are more egregious than this one that got substantially similar sentences. Why should we not be concerned that in terms of the range of possibilities that this sentence doesn't account for the difference in culpability? Your Honor, because that is a case-by-case analysis that needs to be made at the district court level and because the statute authorizes such a broad range of possible sentences between five to life, there's likely to be a lot of variances in the different specific facts of one case. But I do want to point the court to page 29 of our brief, and there's multiple cases where this court has affirmed lengthier variances than the ones in this case. Recently, in Morales-Velez, the variance was double the guidelines. So the variance was from 60 to 120, and that was affirmed. There have been other even higher, Diaz-Vermules, Morales-Velez, Mulero-Vargas, Merced-Garcia. The sentences in those cases for the machine gun count were in the hundreds. And here we're talking about 84 months. In Diaz-Verrillos, if my note is correct, the sentence was 180 months in total. And in Merced-Garcia, 162 months. So, of course, there are factual differences as to each case, but the solution cannot be for this court to make a bright-line ruling as to how far up the court can go, because that would be to strip the court of the discretion to analyze the fact of the case, and it would be equal to turning what is a non-binding plea agreement into a binding plea agreement, and then removing any kind of discretion from the court. Thank you. If there are no more questions, I yield my time to the court. Thank you, Counsel. Attorney for Appellant, please reintroduce yourself on the record. You have a one-minute rebuttal. Hello. Luke Roseal for Appellant Jean Merera-Burgos. I just want to make a few points in response to my sister's argument. One is my sister relied on Morales-Velez, and there were prior convictions. There are none here. Firearm offense when he was 19 and drug-trafficking offense when he was 20. More charges were being dismissed, and the finding was upheld by the district court that the ammo that was recovered was extra-deadly, extra-lethal machine-gun ammo. And so what you see in all of these cases is that there's a panoply of inculpatory facts that were absent here. And what I would commend the court's attention to, Appendix Volume 1, pages 43 through 48, that's the government's sentencing memorandum, where you see the government is urging the court to rely on community characteristics to an excessive extent. And then the government's sentencing rationale, Appendix 285 to 92. And I think a fair reading of those does show that there's too much reliance on community characteristics. Let me say this. The government's memorandum before the district court, there's a plea agreement. So the government can't request over 90 months. But in doing so, it can bring community characteristics. It can bring offense conduct. It can bring mitigation factors. But the government's obligation is to put the court in a position to sentence those 90 months, which is what it did, because there's no breach here. It was the court's initiative. Chief Judge Bearer, may I have one moment to respond to that question? So I do not mean to come across Judge Albee as arguing that there was a breach of the plea agreement. That's not an argument we're raising. But I think what needs to be resolved by this court is the extent to which the district judge's discretion allow them to base a variance on community characteristics. And when you see the volume of argument put forth by the government based on non-individuated community characteristics and the amount of time the court spends discussing those and the sentencing rationale. I think this just goes to the point which you're candid about, which is that we're dealing with a type of firearm not accounted for in the guidelines. And one line of distinction in our case law is it's one thing to rely on community characteristics to justify a variance for a factor the guidelines already take account, such as in a machine gun possession case. But you can use community characteristics to inform how significant it is that there's a factor not accounted for in the guidelines. That's individual to the defendant. Here, the nature of the firearm being machine gun possession. I think that's, may I respond briefly, Chief Judge Barron? I think that's correct. But I think the two areas of community characteristics and the nature of the firearm really dovetail here. Because what district judges expressed concern is is the prevalence of machine gun violence. That's the community characteristic. That's why it's an appropriate use of it since the guideline doesn't account for the nature of that firearm. And so it falls back to the question of the extent to which it can allow for a variance. If there's nothing further, I'll rest in the briefs. Thank you, Your Honors. Thank you, Counsel. That concludes arguments in this case.